IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
             *

 vs.                Case No. **19-cr-00082-GLR-2**

             *

**Gary Lee Washington**    *

          ******

## MEMORANDUM AND ORDER

On July 3, 2020, Defendant filed a Motion for Review of Detention Order seeking to reargue the issue of his detention due to the unanticipated and material change in circumstances brought about by the COVID-19 pandemic pursuant to § 3142(f)(2)(B) of the Bail Reform Act, 18 U.S.C. § 3141, *et seq.* (the "BRA"). (ECF No. 115). Defendant's argument is that, given the increased risk of spread of the virus in a custodial situation like the Chesapeake Detention Facility ("CDF") where he is currently detained pending trial, and given his potential susceptibility to complications should he contract the virus, he should be released to home confinement. *Id.* at 4-5. Because Defendant put his medical condition at issue, on July 7, 2020, this Court ordered CDF to produce Defendant's medical records, which this Court then docketed under seal. (ECF Nos. 116 and 119). On July 14, 2020, the Government filed its Opposition. (ECF No. 120).

The Court finds that no hearing is necessary. Defendant's motion is **DENIED**. Following is the Court's rationale.

Defendant was originally ordered detained by the Court following a detention hearing on April 17, 2019. (ECF No. 71). The COVID-19 pandemic had not yet emerged. This Court has previously recognized under similar circumstances that the COVID-19 pandemic does meet the

requirements of § 3142(f)(2)(B) so as to justify the Court revisiting the detention issue. *See, e.g., United States v. Martin*, 2020 WL 1274857 (D.Md.; March 17, 2020). Though the pandemic is therefore a valid factor in the Court's detention analysis, it is not the only factor, and must be considered within the overall framework of the BRA.

The BRA focuses the Court's pretrial detention inquiry on two issues: (1) a defendant's risk of nonappearance; and (2) the danger that the defendant's release would pose to other individuals. *Id.* at § 3142(f). Congress then specified the criteria that this Court must weigh when assessing those two issues. *See* 18 U.S.C. § 3142(g). As this Court recently observed, none of those factors refers specifically to whether the conditions of detention threaten the defendant's well-being given his health status. *United States v. Gallagher*, 2020 WL 2614819 (D.Md; May 22, 2020); *United States v. Kyrie Thompson*, 2020 WL 2839095 (D.Md.; June 1, 2020).

As noted in *Thompson*, *supra*, at *2, a defendant's physical condition can nonetheless be relevant to a § 3142(g) assessment as it relates to assessing his propensity to appear and/or potentially harm others or might alternatively support temporary release under Section 3142(i) under appropriate circumstances. *See, e.g., United States v. Creek,* 19-036-CCB (ECF No. 421; May 1, 2020) (granting temporary release from the D.C. Jail complex due to defendant's underlying health conditions). In the former, physical condition is weighed along with the other 3142(g) factors as they relate to risk of nonappearance and danger a defendant's release would pose to the community. In the latter, the burden is on a defendant to show that those health concerns are "compelling," outweigh the other 3142(g) factors, and that the defendant's release does not, in turn, pose an increased health risk to the community. *See, e.g., United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also*, *Creek, supra,* ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk

that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

Accordingly, the Court will address the factors set forth in § 3142(g) as they relate to risk of nonappearance and the danger release would pose to the community, and, alternatively, will consider temporary release under § 3142(i), both in the setting of COVID-19.

1. Section 3142(g) Analysis

Defendant is indicted as part of a conspiracy to distribute greater than 400 grams of fentanyl, possession of a firearm (a semi-automatic rifle) in relation to a drug trafficking crime, and possession of a firearm by a prohibited person. (ECF No. 1). The charges carry a rebuttable presumption of detention pursuant to § 3142(e)(3). Defendant's arrest included the recovery of a firearm from his residence, and the recovery of fentanyl from another residence associated with Defendant. (ECF No. 71). Thus, the nature and circumstance of the offense charged are serious.

At the detention hearing, the Government supported its proffer with wiretap evidence and extensive surveillance evidence of Defendant engaging in the charged conduct. *Id.*; ECF No. 120 at 4-8. Thus, the strength of the Government's proffer is substantial.

In terms of his criminal history, Defendant has multiple prior convictions involving drug distribution, and prior weapons convictions as well. (ECF No. 71; ECF No. 120 at 8). Defendant also has numerous prior violations of supervised release. *Id.*

Based on the above, this Court found that Defendant had failed to rebut the presumption of detention and found by clear and convincing evidence at the hearing that no condition or

combination of conditions could reasonably assure the safety of the community should Defendant be released. (ECF No. 71).

The basis of Defendant's motion is not the re-weighing of above factors that were already analyzed by the Court in its original detention decision. Rather, Defendant's "new and material" information relates to the COVID-19 pandemic. Defendant criticizes the overall conditions of detention at CDF that raise the risk of his contracting the COVID-19 virus. (ECF No. 115 at 4-6). Defendant cites positive cases of COVID-19 involving an inmate and some staff members at CDF. *Id*. at 4. Defendant also argues that his underlying health may put him at risk for complications should he contract the virus. *Id*. at 3-5. The Court does not agree that these arguments alter its previous § 3142(g) analysis.

Defendant, now age 39, cites the underlying health conditions of asthma and a previous bout of pneumonia as putting him at particular risk for complications should he contract the virus. *Id*. at 5. To begin with, Defendant's medical records from CDF do not document any history of asthma, nor does it cite a history of pneumonia or that pneumonia was a present concern. (ECF No. 119). They do cite high cholesterol being addressed by diet. *Id*. Pretrial Services did cite a history of pneumonia at the time of Defendant's original interview. More importantly, none of these conditions is noted by the Centers for Disease Control to increase the risk for COVID-19 complications. CDC.gov/coronavirus/2019-ncov (*last visited July 14, 2020*). This does not give the Court any confidence that COVID-19 concerns would significantly enhance Defendant's compliance with release conditions so as to offset the risks raised by the other 3142(g) factors noted above, especially given his prior poor track record on supervision.

2. Section 3142(i) Analysis

As outlined in *Clark*, *supra*, a court's analysis in assessing whether a defendant has proven a "compelling" reason for temporary release in the setting of COVID-19 involves

determining whether the health risk to a defendant from his continued detention outweighs both the traditional § 3142(g) factors and the health risk to the community that he would pose if released.  Looking at Defendant's specific health risks, as noted above, Defendant does not provide support for his assertion that he is at increased risk for complications should he contract the virus.  Moreover, even if Defendant is at some enhanced risk, this does not outweigh the strong case for detention under the other § 3142(g) criteria.  Finally, as mentioned above, Defendant's poor performance on prior supervision makes him less likely to be compliant with the directives of government officials and public health experts regarding COVID-19.

Although it is certainly true that those in a custodial situation such as a detention facility are at increased risk of contracting the virus, CDF has taken a comprehensive set of precautionary measures to protect its staff and its residents, as outlined in great detail by the Government. (ECF No. 120 at 10-14).   While Defendant questions the extent to which these measures have been effectively implemented, whatever actions are being taken have been adequate to protect the detainees at CDF relative to their counterparts, as only five positive cases are noted among CDF inmates, including after a recent screening of 330 inmates was completed, according to the Maryland Department of Public Safety and Correctional Services.  See https://news.maryland.gov/dpscs/covid-19/  (*last visited 07/08/20*).  This reflects a positivity rate of approximately 1.4%, significantly below the current state-wide average of slightly less than 5%.  See https://coronavirus.maryland.gov  (*last visited 07/08/20*).

Accordingly, Defendant's Motion is **DENIED**.

 7/16/2020                              _____
Date                                    J. Mark Coulson
                                        United States Magistrate Judge

